## CHICAGO, R. I. & P. RY. CO. v. CARDEN.

No. 4464.   Opinion Filed May 18, 1915.

(149 Pac. 127.)

**APPEAL AND ERROR—Trial—Refusal of Instructions Covered—Verdict—Conflicting Evidence.** A judgment will not be reversed for refusal to give a requested instruction, although such requested instruction may correctly state the law, if the law applicable to the facts involved is correctly covered by the court's charge; nor will a verdict based upon conflicting testimony be set aside, where the evidence reasonably tends to support such verdict.

(Syllabus by Watts, C.)

*Error from County Court, Jefferson County;*

*B. T. Price, Judge.*

Action by W. P. Carden against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. O. Blake, H. B. Low, R. J. Roberts, W. H. Moore* and *Dillard & Ellis,* for plaintiff in error.

*E. Huser* and *Bridges & Vertrees,* for defendant in error.

WATTS, C. This case was appealed from the county court of Jefferson county, Okla. In a trial by jury W. P. Carden was given judgment on April 26, 1912, against the Chicago, Rock Island & Pacific Railroad Company in the sum of $125 for negligently running over and killing two Jersey cows. Motion for new trial was overruled, and the company appeals, assigning as error:

"(1) The overruling of the motion for new trial.

"(2) The rendering of judgment against the company."

Counsel for the company have condensed the lengthy petition of plaintiff, Carden, into the following language:

"(b) The employees of said defendant failed and neglected to slow up the running of said train, which was at a high rate of speed, and failed to cause said train to stop, which could have been done after the employees of said train saw said cattle" —and argued that the court should have instructed a verdict in its favor or given an offered instruction. With the first contention we cannot agree. In the second it was not error. We have carefully read the evidence, and find a direct conflict of material testimony between witnesses for the respective parties. The evidence in behalf of plaintiff, Carden, goes to show that the cattle were killed at a public crossing by an east-bound passenger train; that the stock alarm signal was given, in the language of one of the witness, "six or eight times," about a quarter of a mile west of where the cattle were killed. The road was smooth and level for eight or nine miles; no effort was made to stop the train; the killing occurred before darkness; that the train could have been stopped within 1,000 feet. Witness Zimmer, on page 26 of the record, was asked and answered the following questions:

"Q. I will ask you, Mr. Zimmer, where you were when you came from the West that night, when you came towards this crossing, what position you occupied in the engine? A. On the seat box, right-hand side. Q. Looking which way? A. Looking ahead. Q. Watching the track? A. Yes, sir."

And on page 28:

"Q. I believe you stated in answer to a question that the whistle was blown a quarter of a mile west of the crossing? A. About that. Q. The first whistle blown was the alarm whistle? A. Yes, sir. Q. About 100 feet west of the crossing? A. Yes, sir."

And on page 29:

"Q. You heard the testimony of Mr. Carden and Mr. Watson that you gave the alarm whistle, or stock whistle, some quarter or half mile west of the crossing; is that a fact? A. Yes, sir; I heard it. Q. Is that a fact? A. No, sir. Q. Could you, at the rate of speed that you were traveling on the evening that these cattle were killed, have stopped that train at the crossing, had you commenced to stop it a quarter of a mile away? A. Yes, sir."

The evidence of the company, except the contradiction of witness Zimmer went to the effect that the cattle were not seen until within 75 or 100 feet of where they were killed; that all possible was done to avoid the accident after seeing the cattle, in the way of giving the alarm signal; and that it was dark, cloudy, and foggy. We therefore think there was sufficient evidence to go to the jury as to whether the engineer, Zimmer, and fireman, Webber, saw the cattle within one-quarter of a mile, or 75 to 100 feet, of where they were killed.

2. The company offered the following instruction, which was denied:

"Gentlemen of the jury, you are instructed that a railway company, is required to exercise only ordinary care to avoid injuring trespassing animals after they are discovered on or in dangerous proximity to the track, where the herd law of Oklahoma has not been suspended. Therefore, if you find that the herd law prohibiting stock from running at large has not been suspended in that part of Jefferson county, Oklahoma, where plaintiff's cattle are alleged to have been killed, and that said stock for which plaintiff seeks damages was running at large in violation of such law, and you further find that said employees, after they discovered the plaintiff's stock, used ordinary care to avoid injuring them, you should find the defendant not liable for said injuries, and your verdict should be for the defendant."

The court on its own motion gave the following instructions:

"You are further instructed, gentlemen of the jury, that the statutes of Oklahoma provide that all cattle, together with certain other domestic animals, shall be by the owners thereof restrained from running at large in Oklahoma, unless permitted to do so by the suspension of said herd law. You are further instructed that there is no evidence in this case that the said herd law has been suspended as provided by law, and that it is presumed as a matter of law, and you are instructed, that said herd law is, and was on September 20, 1911, in force in that part of Jefferson county, Oklahoma, where plaintiff's cattle are alleged to have been killed; and if said cattle of plaintiff were injured upon a public highway while grazing or roaming at large, the said cattle were trespassing and unlawfully upon said premises at said time and place, and the defendant was only under the duty to use ordinary care to avoid injuring them after they were discovered on or in dangerous proximity to its track."

"You are further instructed, gentlemen of the jury, that even though the cattle in question were upon the public highway, in violation of the herd law of Oklahoma, and even though they were trespassers upon the property, it was the duty of the defendant to exercise ordinary care and diligence to protect the said cattle of plaintiff. And if you find from the evidence that the defendant failed to exercise ordinary care and diligence in slowing up his train and bringing same to a stop, after discovering said cattle, and you find that said train crew had ample time so to do, and failed to do so, then and in that event you will find for the plaintiff, even though the cattle were trespassing."

It seems to be conceded, and in fact that court took the view, that domestic animals were restrained from running at large at the time and place these were killed. Counsel for the company do not raise an objection to the first instruction given by the court, but contend that the second was erroneous. We can see but very little difference in the instruction given by the court and the one offered by the company, upon the question of negligence. The court certainly and very explicitly stated to the jury that under the facts in the case the company should only exercise care and deligence in order to protect the cattle, which we think is the law in this state.

The authorities cited by counsel for the company are certainly not in point, and as we see it they have no bearing upon the case at bar, under the facts. This court has frequently held a judgment will not be reversed for refusal to give a requested instruction, although such requested instruction may correctly state the law, if the law applicable to the facts involved is correctly covered by the court's charge, nor will a verdict based upon conflicting testimony be set aside, where the evidence reasonably tends to support such verdict. *Alfred v. St. L., I. M. & S. Ry. Co.*, 42 Okla. 4, 140 Pac. 415; *St. L. & S. F. Ry. Co. v. Brown,* 45 Okla. 143, 144 Pac. 1075.

Finding no error in the trial court, we therefore recommend that the judgment of the lower court be affirmed, with costs.

By the Court: It is so ordered.